UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIONNE CHOYCE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SF BAY AREA INDEPENDENT MEDIA CENTER, et al.,<br><br>　　　　Defendants. | Case No. 13-cv-01842-JST<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO STRIKE; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; AND GRANTING DEFENDANT'S MOTION TO SPECIALLY STRIKE**<br><br>Re: ECF Nos. 9 & 12 |

　　　　Before the Court are three motions in this action for copyright infringement, defamation, and libel. First, Defendant Layer42.net, Inc. ("Layer42") moves this Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff Dionne Choyce's Complaint against it for failure to state a claim ("Motion to Dismiss"). ECF No. 12. Second, Defendant Layer42 moves to specially strike Plaintiff's state law causes of action pursuant to California's anti-SLAPP statute (the "Anti-SLAPP Motion"). Id.[1] Third, Plaintiff Choyce moves pursuant to Rule 12(f) to strike Defendant Layer42's Anti-SLAPP Motion for untimeliness. ECF No. 12. For the reasons set forth below, Plaintiff's motion to strike the Anti-SLAPP Motion is DENIED, Defendant Layer42's motion to dismiss is GRANTED IN PART and DENIED IN PART, and Defendant Layer42's Anti-SLAPP Motion is GRANTED IN PART and DENIED IN PART.

---

[1] Defendant's motion is combined and titled as one: "Notice of Motion and Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted / Special Motion to Strike (Anti-SLAPP)". ECF No. 9. The Court refers to the portion at pages 5:7-11:22 as Defendant's "Motion to Dismiss," and to the portion at pages 11:24-15:8 as Defendant's "Anti-SLAPP Motion."

## I.     BACKGROUND

### A.     The Parties and Claims

Plaintiff Dionne Choyce is a lawyer at The Choyce Law Firm. Compl., ¶ 6, ECF No. 1. Defendant SF Bay Area Independent Media Center ("SFBAIMC") operates an independent media website, indybay.org ("Indybay"), in the County of San Francisco. Id. ¶ 7. Defendant Layer42.net, Inc., a California corporation, provides internet connectivity, hosting, and infrastructure to SFBAIMC "in furtherance of" the Indybay website. Id. ¶ 8. Defendant Cernio Technology Cooperation, an unincorporated association operating in Santa Rosa, California, provides similar services to SFBAIMC as co-defendant Layer42 "in furtherance of" the Indybay website. See id. ¶ 9.

Plaintiff alleges that, on or around April 25, 2012, John Doe Defendants posted a webpage on Indybay with the title "Attorney Dionne choice who embezzled from homeless may serve prison time." Id. ¶ 16. Within this webpage, Defendants or persons associated with Defendants included a graphic image of Plaintiff entitled "dionne_choyce.jpg," which was taken from his firm's website. Id. ¶ 17. The postings contained additional content indicting that Plaintiff was being prosecuted by the U.S. Department of Justice. Id. ¶¶ 16-18.

Additionally, on or around May 24, 2012, other John Doe Defendants posted another webpage on Indybay with the title "The Choyce Law Firm evicted from building." Id. ¶ 19. This webpage used the same graphic image as used in the prior webpage. See id. ¶ 20. The May 24 content claimed that Plaintiff's firm was being evicted from its office for failure to pay two months of rent, and also indicated that the firm's landlord was acting in part in response to Plaintiff's "embezzlement." Id. ¶ 21. The content also claimed that the eviction was applauded by many in the "community" whom Choyce had victimized. Id.

Plaintiff asserts that the content on both webpages is false. See id. ¶ 18, 21. Plaintiff argues that the use of Plaintiff's firm website photo constitutes copyright infringement, and the content on both webpages constitutes defamation and libel. See id. ¶ 5.

The only responding defendant, Layer42, argues that (1) Plaintiff's Complaint should be

dismissed for failure to state a claim; (2) Plaintiff cannot seek statutory damages or attorney's fees for copyright infringement because Plaintiff failed to register his copyright; (3) Layer42 is entitled to immunity for the copyright infringement cause of action because of the Digital Millennium Copyright Act's ("DMCA") safe harbor statute; (4) Plaintiff is barred from recovering against Layer42 pursuant to the Communications Decency Act ("CDA"); and (5) Plaintiff's state law causes of action should be specially stricken pursuant to California's Anti-SLAPP statute. See Def's Mot, ECF No. 9, at 1.

Plaintiff attempts to strike Defendant Layer42's Anti-SLAPP Motion for untimely notice. ECF No. 12.

### B.     Jurisdiction

The Court has federal question and pendent jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367. See Part IV.B, infra.

## II.    PLAINTIFF'S MOTION TO STRIKE

Under Rule 12(f) of the Federal Rules of Civil Procedure, the Court may strike from the pleadings any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Pleadings" include: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). "Under the express language of the rule, only pleadings are subject to motions to strike." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983) (holding that the district court erred in striking a motion under Rule 12(f)).

Since Defendant Layer42's Anti-SLAPP Motion is not a pleading, the Court DENIES Plaintiff's Rule 12(f) motion without leave to amend. To the extent that the arguments contained in Plaintiff's motion to strike can be considered an opposition to Defendant's Anti-SLAPP Motion, the Court will consider the merits of such arguments below. See Part IV.B, infra.

## III.   DEFENDANT'S MOTION TO DISMISS

### A.     Legal Standard

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Dismissal is also proper where the complaint alleges facts that demonstrate that the complaint is barred as a matter of law. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1990); Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).

For purposes of a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a pleading must allege "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. Id. at 556. When dismissing a complaint, the court must grant leave to amend unless it is clear that the complaint's deficiencies cannot be cured by amendment. Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995).

**B. Analysis**

Defendant moves to dismiss Plaintiff's first cause of action for copyright infringement on two grounds: first, that Plaintiff has failed to allege in his complaint that he has registered the allegedly copyrighted work, and second, because the DMCA's safe harbor provisions shield Layer42 from copyright liability. Defendant also argues that the Court should dismiss Plaintiff's state-law defamation and libel causes of action because Plaintiff is barred from recovering against Layer42 pursuant to the CDA.

The Court addresses each of these arguments in turn.

**1. Unregistered Copyright**

4

"[N]o civil action for infringement of the copyright in any United States work shall be instituted until pre-registration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). While it is not a jurisdictional prerequisite, "Section 411(a) imposes a precondition to filing a claim." Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 166 (2010). "[R]eceipt by the Copyright Office of a complete application satisfies the registration requirement of § 411(a)." Cosmetic Ideas, Inc. v. IAC/Interactivecorp., 606 F.3d 612, 621 (9th Cir. 2010).[2]

In this case, the Complaint fails to allege that Plaintiff has registered his alleged copyright or even submitted a complete application, and from his opposition and a subsequently filed declaration it appears that he did not apply until after the complaint was filed. Accordingly, the complaint must be dismissed.

Plaintiff may amend the complaint to allege that he has applied for a copyright. However, "certain remedies, such as statutory damages and attorney's fees, are available only after registration." Cosmetic Ideas, 606 F.3d at 619 (citing 17 U.S.C. § 412). "[N]o award of statutory damages or of attorney's fees . . . shall be made for . . . *any infringement of copyright commenced after first publication of the work and before the effective date of its registration*, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412 (emphasis added). Here, it is undisputed that Plaintiff did not possess a registered copyright—and had not even applied for a copyright registration—within three months after the time of alleged infringement, which was April 25, 2012.[3] See ECF Nos. 1, 9, 10. Therefore, Plaintiff may not

---

[2] There is a split among the circuits on this issue; some courts have rejected the "registration approach" in favor of a requirement that a copyright actually be registered before a plaintiff may file suit. See, e.g., La Resolana Architects, PA v. Clay Realtors Angel Fire, 416 F.3d 1195, 1201-02 (10th Cir. 2005) ("[d]espite the [Copyright] Act's seemingly plain language, courts construing these provisions are split into two competing interpretive camps: the 'Registration approach,' which we have adopted, and the 'Application approach'"), abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010).

[3] The alleged copyright infringement for the image happened approximately in the months of April and May in 2012. See Compl. ¶¶ 17, 20. In his opposition to the motion, Plaintiff concedes that he had not yet registered the image. Pl's Opp'n, ECF No. 10, at 6 ("In light of the closure of the

1 seek those remedies for copyright infringement in any amended complaint.

2         **2. DMCA Safe Harbor**

3       The DMCA provides safe harbors to shield service providers from liability for:

4 (a) transitory digital network communications; (b) system caching; (c) information residing on

5 systems or networks at the direction of users; and (d) information location tools. 17 U.S.C.

6 § 512(a)-(d); see also Perfect 10, Inc. v. CCBill LLC, 488 F.3d 1102, 1109 (9th Cir. 2007). "To

7 be eligible for any of the four safe harbors at §§ 512(a)-(d), a service provider must first meet the

8 threshold conditions set out in § 512(i)." Perfect 10, 488 F.3d at 1109 (citations omitted). Section

9 512(i)(1)(A) requires that a service provider:

> [H]as adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers.

13 See Perfect 10, 488 F.3d at 1109.

14       In Ellison v. Robertson, the Ninth Circuit held that the question of whether a defendant

15 functioned as a conduit service provider pursuant to section 512(a) presents questions of law, but

16 that the analysis required to determine the threshold requirements in section 512(i) presents triable

17 issues of material fact. 357 F.3d 1072, 1074, 1081 (9th Cir. 2004) ("There are triable issues of

18 material fact concerning whether AOL meets the threshold requirements, set forth in § 512(i), to

19 assert the safe harbor limitations of liability of §§ 512(a-d)."); but see also id. ("Whether AOL

20 functioned as a conduit service provider in this case presents pure questions of law.").

---

United States Office of Copyright on October 1, 2013, Plaintiff cannot proceed with registration of his copyright until that office is reopened by funding from Congress."). Therefore, Plaintiff did not have a registered copyright for the image for over a year after the infringement. There is a grace period of three months after publication during which registration can be made without loss of remedies, but Plaintiff has not provided facts sufficient to establish that the image from the firm website had been recently published at the time of infringement. See 17 U.S.C. § 412. Moreover, even if that grace period were to apply here, Plaintiff still would have had to register the copyright within one month after having learned of the infringement, which Plaintiff clearly did not do. See id. Plaintiff did finally register his copyright on October 23, 2013. Supplemental Decl. of Dow W. Patten, ECF No. 17. However, that is still six months after the filing of his Complaint on April 23, 2013. See Compl., ECF No. 1.

6

1  Defendant argues that it qualifies for section 512(a) safe harbor. See Def's Mot., 7-10.
2  However, Defendant fails to address in its motion whether it meets the threshold requirements
3  provided in section 512(i). The Court cannot determine on a motion to dismiss that Defendant's
4  claim to service provider immunity under the DMCA defeats Plaintiff's copyright claim as a
5  matter of law.

### 3. State Law Claims

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, n.7 (1988). Therefore, since the Court will dismiss the only federal claim, and since the only jurisdiction the Court might exercise over Plaintiff's state-law claims is supplemental jurisdiction, it will not address Plaintiff's state law claims on a 12(b)(6) motion. However, the Court does reach those claims insofar as Defendant is entitled to consideration of its anti-SLAPP motion. See Part IV, infra.

## IV. DEFENDANT'S ANTI-SLAPP MOTION

### A. Legal Standard

The California anti-SLAPP ("Strategic Lawsuit Against Public Participation") statute permits defendants to gain early dismissal of claims through a special motion to strike civil actions "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech." Cal. Code Civ. Proc. § 425.16(a). The anti-SLAPP statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that there is a probability that the plaintiff will prevail on the claim.

Id. § 425.16(b)(1) (emphasis added). Among others, an act "in furtherance of" these rights include "any written or oral statement or writing made in a place open to the public or a public forum in

7

connection with an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(3). "[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Code Civ. Proc. § 415.16(c)(1).

California's anti-SLAPP statute is available to litigants in federal court. U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc., 190 F.3d 963, 973 (9th Cir. 1999); see also Batzel v. Smith, 333 F.3d 1018, 1025-26 (9th Cir. 2003) (federal courts sitting in diversity "recognize[] the protection of the anti-SLAPP statute as a substantive immunity from suit"). However, "[p]rocedural state laws are not used in federal court if to do so would result in a 'direct collision' with a Federal Rule of Civil Procedure." Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 845 (9th Cir. 2001) (quoting Walker v. Armco Steel Corp., 446 U.S. 740, 749-50 (1980)). The Ninth Circuit has "accordingly refused to apply certain discovery-limiting provisions of the anti-SLAPP statute because they would conflict with Fed. R. Civ. P. 56," and has also held that "granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment." Verizon Delaware, Inc. v. Covad Commc'ns Co., 377 F.3d 1081, 1091 (9th Cir. 2004) (citing Metabolife, 264 F.3d at 845). As a result, "the federal court special motion is a far different (and tamer) animal than its state-court cousin." Makaeff v. Trump Univ., LLC, 715 F.3d 254, 275 (9th Cir. 2013) (Kozinski, C.J., concurring).

To determine whether a defendant is entitled to specially strike an anti-SLAPP action, state courts engage in a two-part burden-shifting inquiry.

> First, a defendant must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech. The defendant need not show that the plaintiff's suit was brought with the intention to chill the defendant's speech; the plaintiff's intentions are ultimately beside the point. Similarly, the defendant bringing a motion to strike need not show that any speech was actually chilled.
>
> Second, once the defendant has made a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims. If the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim, the motion to strike must be denied.

Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1110 (9th Cir. 2003) (internal citations and quotation marks omitted). However, if the anti-SLAPP statute's discovery-limiting provisions "were used in federal court to test the plaintiff's evidence before the plaintiff has completed discovery, it would collide with Federal Rule of Civil Procedure 56." Metabolife, 264 F.3d at 846 (quoting Rogers v. Home Shopping Network, Inc., 57 F.Supp.2d 973, 980 (C.D.Cal.1999). Therefore, "[i]f a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies." Rogers, 57 Supp. 2d at 980.

### B. Timeliness of the Anti-SLAPP Motion

California Code of Civil Procedure section 425.16(f) requires that the moving party schedule an anti-SLAPP motion hearing with the clerk of the court "*not more than 30 days* after the service of the motion *unless docket conditions of the court require a later hearing*." (emphasis added). This Court's Local Rule 7-2(a) states that all motions must be filed, served, and noticed in writing on the motion calendar "for hearing *not less than 35 days* after service of the motion." (emphasis added).

As Plaintiff notes in his motion to strike, Defendant Layer42 properly scheduled a hearing in accordance to Local Rule 7-2(a), but did not schedule within 30 days pursuant to the Section 424.16(f) requirement. See ECF No. 12, at 4-5. However, this scheduling is not untimely because district courts have held that "the local rules that apply in any given district should be considered 'docket conditions' that would justify a later hearing." See, e.g., Rogers, 57 F. Supp. 2d at 981, n.3 (C.D. Cal. 1999) (holding that a motion for summary judgment was properly set because section 425.16(f) does not substantively affect usual procedures pursuant to the Federal Rules). The Court agrees with this conclusion and concludes that the Anti-SLAPP Motion hearing here was properly set.

### C. Merits of the Anti-SLAPP Motion

Plaintiff argues that the two webpages posted on Indybay—the first titled "Attorney

1  Dionne choice who embezzled from homeless may serve prison time," and the second titled "The
2  Choyce Law Firm evicted from building"—are inflammatory and false, and form the basis of his
3  state-law defamation and libel claims. Compl. ¶¶ 16-21.

### 1. An Issue of Public Interest

An anti-SLAPP movant must first make a *prima facie* showing that the plaintiff's cause of action falls within the protection of the anti-SLAPP statute, here specifically that it arises from a written or oral statement or writing that was "made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(3).[4]

Although California's anti-SLAPP statute provides no definition of what constitutes "an issue of public interest," the California Courts of Appeal have considered some of the five guiding principles for what distinguishes a public interest from a private one:

> First, "public interest" does not equate with mere curiosity.
>
> Second, a matter of public interest should be something of concern to a substantial number of people. Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest.
>
> Third, there should be some degree of closeness between the challenged statements and the asserted public interest; the assertion

---

[4] The anti-SLAPP statute provides that:

> As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes:
>
> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law,
>
> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,
>
> (3) *any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest*, or
>
> (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e) (emphasis added).

10

>of a broad and amorphous public interest is not sufficient.
>
>Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of [private] controversy.
>
>Finally, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure. A person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

See, e.g., Weinberg v. Feisel, 110 Cal. App. 4th 1122, 1132-33 (2003) (internal citations and quotation marks omitted) ("[T]he [anti-SLAPP] statute requires that there be some attributes of the issue which make it one of public, rather than merely private, interest.").

The parties have not cited, and the court is not aware of, any published authority addressing whether accusations of attorney misconduct are "an issue of public interest" for purposes of applying the first prong of the Anti-SLAPP analysis.[5] However, "courts have broadly construed public interest to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." Cross v. Cooper, 197 Cal. App. 4th 357, 372 (2011), as modified on denial of reh'g (Aug. 4, 2011), review denied (Oct. 12, 2011).

In a recent decision analyzing California precedents, the Ninth Circuit concluded that "[u]nder California law, statements warning consumers of fraudulent or deceptive business practices constitute a topic of widespread public interest, so long as they are provided in the context of information helpful to consumers." Makaeff, 715 F.3d at 262. The Ninth Circuit cited, among other cases, Wilbanks v. Wolk, in which a consumer advocate published negative statements online about a viatical settlement broker, including the allegedly false statements that

---

[5] The Court has located a single unpublished Court of Appeal decision holding that "where there are unrefuted allegations that a defendant in a defamation action made false and unprivileged statements regarding specific attorney misconduct, and the statements are unconnected to a State Bar investigation or any other official proceeding, the action is not subject to an anti-SLAPP motion on the ground attorney misconduct is a public issue or matter of public interest." Harbison v. Norcal Mut. Ins. Co., No. C043769, 2004 WL 1175332, at *7 (Cal. Ct. App. May 27, 2004). For the reasons set forth above, the Court here reaches a different conclusion.

11

the broker company was "under investigation by the CA dept. of insurance," and that a plaintiff had won a judgment against the company. 121 Cal. App. 4th 883, at 889-890 (2004). The California Court of Appeal held that the statements were "made in connection with an issue in the public interest" under the first prong of the anti-SLAPP analysis. Id. at 901.

For similar reasons, statements that an attorney has embezzled from clients, and is being prosecuted for doing so, relate to an issue of public interest. Applying the factors identified in Weinberg, the Court finds that substantial number of people, especially potential clients, would be concerned, for reasons beyond mere curiosity, with whether an attorney was embezzling from clients, and the statements alleged in the complaint are closely connected to that interest.

In fact, the level of public interest in the conduct of an attorney is both actually and appropriately higher than the level of interest in the conduct of viatical settlement brokers or online universities. Cf. Wilbanks, 121 Cal.App.4th at 889; Makaeff, 715 F.3d at 260. Lawyering is "a profession imbued with the public interest and trust," Standing Comm. on Discipline of U.S. Dist. Court for S. Dist. of California v. Ross, 735 F.2d 1168, 1170 (9th Cir. 1984), and California law specifically recognizes the public's heightened interest in acts of moral turpitude committed by members of the California bar. Cal. Bus. & Prof. Code §§ 6001.1, 6106.

Unlike the statements discussed in Makaeff and Wilbanks, the challenged statements in this case are less obviously targeted at potential consumers of legal services. However, any doubt about whether the challenged statements relate to a matter of public interest must be resolved in favor of favoring freedom of speech, because "the question whether something is an issue of public interest must be 'construed broadly.'" Hecimovich v. Encinal Sch. Parent Teacher Org., 203 Cal. App. 4th 450, 464 (2012), review denied (Apr. 25, 2012) (quoting Gilbert v. Sykes, 147 Cal.App.4th 13, 23 (2007) (internal quotation marks omitted)).

To be clear, in reaching this conclusion the Court reaches no conclusions about the merits of Plaintiff's defamation and libel claims. Plaintiff alleges that the Doe Defendants stated specifically that the federal government had filed a complaint against Plaintiff for embezzlement. To the extent that that statement is demonstrably false, the speaker of that statement will have

1 difficulty surviving the second prong of the anti-SLAPP analysis. See, e.g., Wilbank, 121
2 Cal.App.4th at 901-08 (holding that defendant's anti-SLAPP motion failed on the second prong,
3 even under the more defendant-friendly version of that analysis which applies in state court). But
4 the Court's task in applying the first prong of the anti-SLAPP analysis is only to consider whether
5 the statements concern a matter of public interest. Statements that an attorney is embezzling from
6 clients qualify.

7 However, unlike the April 25 posting, many of the statements in the May 24 posting do not
8 directly relate to the claim that Plaintiff was embezzling. See Compl. ¶¶ 19-21. The allegation
9 that the Plaintiff's law firm was being evicted from its office space does not appear to relate to a
10 matter of public interest, and Layer42.net provides no argument why it does. Therefore, to the
11 extent that Plaintiff bases his defamation and libel claims on the statement that Plaintiff's firm was
12 evicted for nonpayment of rent, those statements are not vulnerable to an anti-SLAPP motion.

13 On the whole, however, the gravamen of Plaintiff's arises from statements connected to a
14 matter of public interest. Courts "examine the principal thrust or gravamen of a plaintiff's cause
15 of action to determine whether the anti-SLAPP statute applies, and when the allegations referring
16 to arguably unprotected activity are only incidental to a cause of action based essentially on
17 protected activity, collateral references to unprotected activity should not obviate application of
18 the anti-SLAPP statute to the complaint." Ramona Unified Sch. Dist. v. Tsiknas, 135 Cal. App.
19 4th 510, 519-20 (2005); see also Club Members For An Honest Election v. Sierra Club, 45 Cal.
20 4th 309, 319 (2008) (citing Martinez v. Metabolife Int'l, Inc., 113 Cal. App. 4th 181, 188 (2003))
21 ("[t]he 'principal thrust or gravamen' test has been used to determine whether an action fits within
22 the scope of the anti-SLAPP protection provided by section 425.16 when a pleading contains
23 allegations referring to both protected and unprotected activity").

24 Accusations of attorney embezzlement pervade the statements Plaintiff seeks to challenge,
25 and the statements about the firm's eviction from its office are collateral to those accusations. See
26 Compl. ¶¶ 17-21.[6] Layer42 has met its burden of demonstrating that the statements in the

---

[6] "As consumers get fed up with non-payment, so do Landlords. This time it was a landlord who

1   complaint which relate to Plaintiff having embezzled, and being prosecuted for having embezzled,
2   are connected to a matter of public interest.

### 2. Probability of Prevailing

In his Complaint, Plaintiff alleges that Layer42 "provides Internet connectivity, hosting, and infrastructure." Compl. ¶ 8. Therefore, according to the complaint, Layer42 is an "interactive computer service" under the CDA. "The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). Accordingly, since "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," the allegations of the complaint establish that Layer42 is presumptively immune from liability for the content that the Doe Defendants posted on the Indybay website. 47 U.S.C. § 230(c)(1); see also Compl. ¶¶ 16-19.

In his opposition, Plaintiff does not dispute that Layer42 is the provider of an interactive computer service. Instead, he argues that the immunity does not apply when the service provider itself is responsible for creating and developing content. Opp. 6:18-7:21 (citing Fair Housing Council of San Fernando Valley v. Roommates.com, LLC, 521 F.3d 1157, 1162 (9th Cir. 2008); Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1100 (9th Cir. 2009)).

However, the complaint contains no factual allegations from which it could plausibly be inferred that Layer42 was in any way responsible for putting the material online, except insofar as Layer42 provides Defendant SFBAIMC with internet hosting services. Plaintiff alleges that SFBAIMC, not Layer42, "sponsors and operates" the website where the challenged statements appeared. Compl. ¶ 7. Plaintiff does not allege that Layer42 plays any role developing or creating content on the Indybay website. As an internet service provider rather than the host of an

---

read an article about Mr. Dionne Choyce an Attorney who embezzled from the Homeless . . . . Although Mr. Choyce had no comment when we reached his firm, the landlord stated he did it for the 99% that Mr. Choyce has ripped off." Id. at ¶21.

14

interactive website, Layer42's connection to the challenged statements is even more attenuated than in the many cases in which courts held that a website host was shielded from liability by Section 230 of the CDA. See Carafano v. Metrosplash.com, Inc., 339 F.3d 1119, 1125 (9th Cir. 2003) (Matchmaker website not liable for information posted by website user); Levitt v. Yelp! Inc., No. 10-cv-1321-EMC, 2011 WL 5079526, at *6-9 (N.D. Cal. Oct. 26, 2011) (Yelp! immune even where alleged to have manipulated content posted by others).

The closest the complaint comes to alleging Layer42's role in producing the challenged content is by alleging on information and belief that all of the named defendants were "acting as the partner, agents, servants and employees of each other," by alleging that Defendants all "conspired to" publish the material, and then group-pleading all of its claims against all defendants collectively. Compl. ¶¶ 11, 28-32, 41-42, 52-57, 61, 63, 68-69, 71. This "formulaic recitation" of the elements of agency and conspiracy liability are not well-pled factual allegations entitled to a presumption of truth. See Twombly, 550 U.S. at 555.

Indeed, the only factual allegations in the entire complaint that relate specifically to Layer42 is the allegation that it provides internet hosting, connectivity, and infrastructure. Compl. ¶¶ 8-9. That allegation does nothing to establish Layer42's liability; in fact, all it does is establish its presumptive immunity. The facts alleged in the complaint fail to state a claim for defamation or libel against Defendant Layer42.net, and would be subject to dismissal pursuant to Rule 12(b)(6).

### 3. Conclusion

Insofar as the Complaint brings defamation and libel claims against Defendant Layer 42 for the statements that Plaintiff embezzled and was being prosecuted for embezzlement, the Court SPECIALLY STRIKES those claims pursuant to California's anti-SLAPP statute.

"[A] party who partially prevails on an anti-SLAPP motion must generally be considered a prevailing party unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion." Mann v. Quality Old Time Serv., Inc., 139 Cal. App. 4th 328, 340 (2006). The Court concludes that, in striking the gravamen of Plaintiff's

1   defamation and libel claims against it, Layer42 achieved some practical benefit in bringing the

2   motion. Layer42 consequently . . . [is] entitled to recover attorney fees and costs incurred in

3   moving to strike the claims on which . . . [it] prevailed, but not fees and costs incurred in moving

4   to strike the remaining claims." ComputerXpress, Inc. v. Jackson, 93 Cal. App. 4th 993, 1020

5   (2001).[7]

## V. LEAVE TO AMEND

As discussed supra, the Court will grant Plaintiff leave to amend his complaint to re-allege

---

[7] Users and producers of interactive computer services can prevail on an anti-SLAPP motion by arguing that, under 47 U.S.C. § 230(c)(1), they cannot be treated as the publisher or speaker of third-party content. See Barrett v. Rosenthal, 40 Cal. 4th 33, 40-42 (2006). However, this creates an interesting tension with the text of the anti-SLAPP statute, albeit not one raised by the parties. By invoking Section 230(c)(1) immunity, the provider or user of an interactive computer service is arguing that it is not the publisher or speaker of the challenged statement, and therefore it must prevail on the second prong of the anti-SLAPP analysis. But on the *first* prong of the anti-SLAPP analysis, a cause of action is subject to strike only if it is "a cause of action *against a person* arising from any *act of that person* in furtherance of *the person's* right of petition or free speech . . . in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1) (emphases added). Here, the moving party, Layer42, has demonstrated that the challenged statements were made in furtherance of *the speaker's* right of free speech, but it cannot show that the statements were an exercise of *Layer42's* rights of free speech. After all, Layer42's defense is that it was not the publisher or speaker of the challenged statements. From the text of the anti-SLAPP statute, it would appear that, since the causes of action *against Layer 42* do not arise from any *act of Layer42*'s in furtherance of *its* free speech rights, Layer42 is not in a position to move to specially strike the claims against it while simultaneously claiming that it was not the speaker of the statements.

However, such an interpretation would be inconsistent with the result reached in Barrett. While the California Supreme Court did not address this question, it held that the California Court of Appeal erred in vacating an anti-SLAPP order because the website user who brought the motion to strike was immune from liability under Section 230 for posting a copy of an article written by another author. 40 Cal.4th at 41-42, 62-63. The trial court in that case, whose order the Supreme Court effectively reinstated, had determined that the first prong of the anti-SLAPP statute was satisfied because the "lawsuit arises from speech covered by the statute," and did not impose any requirement that the moving party establish that the causes of action she sought to strike arose out of her specifically exercising her right of free speech. Barrett v. Clark, 833021-5, 2001 WL 881259, at *4-6 (Cal. Super. Ct. July 25, 2001). "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." City of Cotati v. Cashman, 29 Cal. 4th 69, 78 (2002). The Court has not identified any authority stating that a defendant may not bring an anti-SLAPP Motion based an act made in furtherance of a *different* defendant's right of free speech.

a copyright infringement claim if he alleges that he has now applied for a copyright.

In state court, granting an anti-SLAPP motion is the equivalent to dismissal with prejudice. However, the Ninth Circuit has held that "granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment." Verizon Delaware, 377 F.3d 1091. Strictly speaking, Verizon Delaware was discussing a plaintiff's right under Rule 15(a)(1) to amend once as a matter of course, rather than a plaintiff's general ability, pursuant to under Rule 15(a)(2), to receive leave to amend after dismissal without prejudice. However, other district courts have concluded from Verizon Delaware that, when dismissing a claim pursuant to the anti-SLAPP statute, a plaintiff should be granted leave to amend and re-assert the stricken claims, although with the proviso that the newly amended complaint would then also be subject to yet another anti-SLAPP motion. See, e.g., Gressett v. Contra Costa Cnty., No. 12-cv-3798-EMC, 2013 WL 2156278, at *35 (N.D. Cal. May 17, 2013).

The Ninth Circuit held after Verizon Delaware that "Oregon's anti-SLAPP statute, which requires entry of a judgment of dismissal without prejudice, does not directly conflict with the Federal Rules'" provisions for liberal amendment. Gardner v. Martino, 563 F.3d 981, 991 (9th Cir. 2009). However, the Court reads Gardner as holding only that an anti-SLAPP statute may entitle a movant to receive an order of dismissal, and that a plaintiff who has already amended once as of right cannot avoid that fate by seeking to amend its order yet again before the order of dismissal is entered. The Court does not understand Gardner to undermine Verizon Delaware's rule that 15(a)'s policy of liberal amendment supersedes any state-law requirements that would otherwise require dismissal with prejudice.

VI.   **CONCLUSION**

Plaintiff's motion to strike is DENIED.

Defendant Layer42's motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's copyright claim is DISMISSED WITHOUT PREJUDICE. The Court DENIES the motion to dismiss insofar as it seeks dismissal of Plaintiff's second and third causes of action

1 pursuant to Rule 12(b)(6).

2 Defendant Layer42's Anti-SLAPP Motion to specially strike state law claims is
3 GRANTED IN PART and DENIED IN PART. The Court strikes the defamation and libel claims
4 against Defendant Layer42 insofar as the statements about embezzlement and prosecution for
5 embezzlement form the basis of those claims.

6 The Court grants Plaintiff leave to file an amended complaint re-asserting his copyright
7 claim, if he alleges that he has now applied for a copyright. He must in any such complaint
8 restrict his asserted remedies to those which are available for infringement alleged to have
9 occurred before the copyright holder applied for a copyright.

10 In an amended complaint, Plaintiff must either amend the complaint to drop the stricken
11 claims, or may re-assert those claims if he alleges new facts which can overcome the deficiencies
12 addressed at Part IV-C-2, *supra*. Those claims, however, would then be subject to another anti-
13 SLAPP motion.

14 Any amended complaint must be filed within twenty-one days of the date of this order.
15 Failure to comply with this order will result in dismissal with prejudice of the federal claim.

16 **IT IS SO ORDERED.**

17 Dated: December 1, 2013

18 _____
JON S. TIGAR
19 United States District Judge