Roger Myers (CA State Bar No. 146164)
roger.myers@bryancave.com
Leila Knox (CA State Bar No. 245999)
leila.knox@bryancave.com
Katherine Harrison (CA State Bar No. 285561)
katherine.harrison@bryancave.com
**BRYAN CAVE LLP**
560 Mission Street, 25th Floor
San Francisco, CA  94105-2994
Telephone:    (415) 675-3400
Facsimile:    (415) 675-3434

Attorneys for Defendant
SF BAY AREA INDEPENDENT MEDIA CENTER

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DIONNE CHOYCE,<br><br>       Plaintiff,<br><br>v.<br><br>SF BAY AREA INDEPENDENT MEDIA CENTER, a.k.a. IMC, SF BAY AREA, a.k.a. SF BAY AREA IMC; an unincorporated association; LAYER42.NET, INC., a California Corporation, CERNIO TECHNOLOGY COOPERATIVE, an unincorporated association, and DOES 1-10,<br><br>       Defendants. | Case No. CV-13-1842-JST<br><br>**REPLY IN SUPPORT OF DEFENDANT SF BAY AREA INDEPENDENT MEDIA CENTER'S MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(B)(6) AND TO SPECIALLY STRIKE PLAINTIFF'S STATE LAW CAUSE OF ACTION PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16**<br><br>Hearing Date: February 13, 2014<br>Time:         2 p.m.<br>Judge:        Hon. Jon S. Tigar<br>Courtroom:    9 |

## **INTRODUCTION**

Unable to squarely address the law or the evidence presented by Defendant SF Bay Area Independent Media Center ("Indybay"), Plaintiff obfuscates the former and objects to the latter. But his tactics are not only ill-founded, they cannot obscure the inconvenient truth that Plaintiff has not alleged – and, as his Proposed Second Amended Complaint confirms, cannot allege – two facts essential to maintain his claims: (1) that he owns a copyright in a photograph of himself he admits he did not take, and (2) that Indybay had any involvement in creation of the content posted by third parties to Indybay's website. The Court should therefore grant Indybay's motions to dismiss and strike, and deny Plaintiff's futile request for leave to once again amend his complaint.

# I.

## PLAINTIFF'S OPPOSITION AND PROPOSED SAC CONFIRM THAT HIS CLAIMS AGAINST INDYBAY ARE BARRED AS A MATTER OF FEDERAL LAW

In the main, Plaintiff's Opposition to the motion to dismiss rests on his request for leave to try for a third time to state claims for copyright infringement and defamation.  But, as Plaintiff's proposed SAC shows, the third time is not a charm.  Unable to rely on his belated registration as prima facie evidence of ownership, *Lawrence v. Sony Pictures Entm't*, 534 Fed. Appx. 651, 653 (9th Cir. 2013), Plaintiff alleged no facts showing he owns the copyright in a portrait of himself he admits he did not take.  Dkt. 11, ¶ 2.  Nor has he alleged facts sufficient to state a "viable legal theory" for defamation that circumvents Section 230.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (quotation omitted).  Plaintiff thus has not come close to "nudg[ing] [his] claims across the line from conceivable to plausible, [and his] complaint must be dismissed."  *Id.* at 570.

### A.  Plaintiff Still Identifies No Facts Showing He Owns A Copyright In The Photo

Failing to state a cognizable copyright claim in his Complaint, and failing to include in his First Amended Complaint the allegations he was ordered to add, Plaintiff's plea for yet another chance to make it past the pleading post should be rejected.  Opp. 6.  This is true not only because the Court warned that "[f]ailure to comply with this order will result in dismissal with prejudice," Order 18, but also because his proposed SAC contains no facts showing he owns a copyright.

Although his Opposition claims "Plaintiff's Copyright Claim Is Sufficiently Plead[sic]," Opp. 5, his Opposition to Layer42's motions concedes he failed to comply with the Court's Order but contends the error was "harmless" – and that he should be allowed to re-plead – because it turns out he had previously submitted a belatedly obtained registration.  Dkt. 37 at 3-4.  That registration appears to be the sole basis for his claim that he "alleges absolute ownership," Opp. 5, as he thinks his "registration is prima facie evidence of ownership."  *Id.* at 6 (citing 17 U.S.C. § 410(c)).

The fatal flaw in Plaintiff's logic is that the statute he cites says his registration is ***not*** prima facie evidence of anything because it was "not 'made before or within five years after first publication of the work.'"  *Lawrence*, 534 Fed. Appx. at 653 (quoting § 410(c)).  His registration is dated October 23, 2013, more than eight years after the date of first publication – January 1, 2005 –

listed on the registration. Dkt. 17, Exh. A. "Because the registration was obtained more than five years after the [photograph's] first publication, the registration certificate, on its own, does not constitute prima facie evidence of valid copyright ownership." *Art of Living Found. v. Does 1-10*, 102 U.S.P.Q.2d 1820, 2012 U.S. Dist. LEXIS 61582, *25 (N.D. Cal. May 1, 2012).

Absent a timely registration, "Plaintiff bears the burden of proving copyright ownership, which is always a threshold question in copyright infringement actions." *Id.* at *23 (citing, e.g., *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 962 (9th Cir. 2011)). "To prove ownership, Plaintiff must establish either that [he] authored the asserted work, or that there has been a 'transfer of rights or other relationship between the author and the plaintiff so as to constitute the plaintiff as the valid copyright claimant.'" *Id.* at *23-24 (quoting *Nimmer on Copyright* § 13.01). To avoid being rejected as futile, Plaintiff's proposed SAC thus must contain "'direct or inferential allegations'" sufficient to "plausibly plead[]" the "material element[]" of "ownership" through one of these means. *Stevo Design, Inc. v. SBR Mktg.*, 919 F. Supp. 2d 1112, 1119-20 (D. Nev. 2013) (granting motion to dismiss) (quoting *Twombly*, 550 U.S. at 562).

The SAC alleges neither. Plaintiff admits he is not the author because he concedes the image was a "professional photograph taken of me for use on my website." Dkt. 11, ¶ 2; *see also Lawrence*, 534 Fed. Appx. at 653 ("copyright to the Video initially vested in … the author of the Video"); *Aalmuhammed v. Lee*, 202 F.3d 1227, 1232-33 (9th Cir. 2000) ("the photographer was the author").[1] And Plaintiff has not alleged he received a transfer of rights. *Lawrence*, 534 Fed. Appx. at 653. If such a transfer actually happened, it should be easy to allege.[2] Yet Plaintiff has failed to

---

[1] For this reason, Plaintiff's registration "cannot be viewed as valid" – and thus cannot support his cause of action – because it did not include the true "author's name," but instead inaccurately identified Plaintiff as author of a photograph he did not take. *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, 712 F. Supp. 2d 84, 95 (S.D.N.Y. 2010). If Plaintiff's theory is that the photograph was a work made for hire, he failed to comply with "the Copyright Act[']s require[ment] that [his] registration[] provide a statement identifying [that] the work[] being registered [was a] work[] made for hire." *Muench Photography; Inc. v. Pearson Educ., Inc.*, 2013 U.S. Dist. LEXIS 165884, *21-22 (N.D. Cal. Nov. 19, 2013) (citing 17 U.S.C. § 409(4)).

[2] *See Minden Pictures, Inc. v. Pearson Educ., Inc.*, 2012 U.S. Dist. LEXIS 62941, *3-9 (N.D. Cal. May 4, 2012) (plaintiff cured deficiency by alleging "it is co-owner of [some] exclusive rights … [in] the photographs" by virtue of "assignment agreements," which it "appended" to the SAC, showing "the photographers assigned to [plaintiff] co-ownership of the copyrights in the images").

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

do so in three tries, and has not said anything suggesting he can. Plaintiff therefore "lack[s] standing to bring an action for copyright infringement" and his claim should be dismissed with prejudice. *Silvers v. Sony Pictures Entm't*, 402 F.3d 881, 883 (9th Cir. 2005) (en banc) (reversing denial of motion to dismiss).[3]

**B.      Plaintiff Identifies No Facts Showing His Defamation Claim Can Evade Section 230**

Plaintiff does not dispute the factors identified in *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988), support the Court retaining jurisdiction to decide Indybay's motion to dismiss his defamation claim. *See also Johnson v. Federal Express Corp.*, 147 F. Supp. 2d 1268, 1276 (M.D. Ala. 2001) ("Because Johnson's federal claims are due to be dismissed, the court has the discretion to decline ruling on her three state law claims. Johnson alleges defamation, outrageous conduct, and false imprisonment. Because the first claim potentially implicates precious First Amendment liberties, the court will keep this case.") (citing *Carnegie-Mellon*, 484 U.S. at 357).

Instead, Plaintiff contends Indybay's motion should be denied on the theory that he has or can allege facts showing Indybay is "much more than a passive infrastructure provider" and thus, he argues, not shielded from defamation liability by Section 230. Opp. 6. But Plaintiff's theory has been consistently rejected, including by the majority opinion in a case he cites. *Barrett v. Rosenthal*, 40 Cal. 4th 33, 59-62 (2006) ("in cases where [defendant's] role as operator of a Web site raised a question as to whether he was a 'service provider' or a 'user,' the courts found it unnecessary to resolve the issue because the statute confers immunity on both" and provides "no basis for … any operative distinction between 'active' and 'passive' Internet use") (citing, e.g., *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003)); *see also, e.g., Goddard v. Google, Inc.*, 2008 U.S. Dist. LEXIS 101890, *7 n.2 & *11 (N.D. Cal. Dec. 17, 2008) ("'Today, the most common interactive computer services are websites,'" and, "for § 230 not to apply, it must be 'very clear

---

[3] Plaintiff's efforts to distinguish *Silvers* and *Aalmuhammed* miss the point. In *Silvers*, the plaintiff was assigned a right – to sue for infringement – but the Ninth Circuit held that what the plaintiff had been assigned was insufficient as a matter of law to confer standing. 402 F.3d at 883. In this case, Plaintiff does not allege that he received any sort of assignment or transfer of rights, so the basis for dismissal is even clearer. As for *Aalmuhammed*, Indybay never claimed it says Plaintiff must allege the photograph was a "work for hire," Opp. 5, but instead only that it shows Plaintiff cannot claim to be the author of a photograph that he did not take. 202 F.3d at 1232-33.

1  that the website directly participates in developing the illegality' at issue.") (quoting *Fair Housing*
2  *Council v. Roommates.com*, LLC, 521 F.3d 1157, 1162 n.6 & 1174 (9th Cir. 2008) (en banc)).

3  Moreover, the purported "facts" on which Plaintiff bases his theory have also been found
4  insufficient to overcome Section 230's broad immunity.  As this Court has held, the "allegations of
5  conspiracy and concerted action" on which Plaintiff relies, Opp. 7, are "not well-pled factual
6  allegations entitled to the presumption of truth."  Order 15 (citing *Twombly*, 550 U.S. at 555, which
7  rejected conclusory allegations of a "conspiracy").[4]  And as the Ninth Circuit has held, the presence
8  of *other* content on the site posted by members of the Indybay collective, Opp. 7, does not
9  undermine Indybay's Section 230 protection for content about Plaintiff posted by third parties.
10 *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cal. 2003).[5]

11 Many courts have also rejected Plaintiff's argument that Indybay's alleged "control over the
12 content" on its website, as evidenced by its "contracts" and practices, Proposed SAC, ¶ 38 – such
13 as its ability to edit content and decide what remains "published" or is "removed," *id.* – negates
14 Section 230 protection.  *See Goddard*, 2008 U.S. Dist. LEXIS 101890 at *10-11 (citing *Blumenthal*
15 *v. Drudge*, 992 F. Supp. 44, 52 (D.D.C. 1998), as holding AOL "was immune from defamation
16 liability based on its hosting of a gossip column, even though [it] had contracted with the gossip
17 columnist to provide the column for a monthly compensation of $3000, had retained considerable
18 editorial rights, and affirmatively had promoted the columnist as a new source of unverified instant
19 gossip"); *Levitt v. Yelp! Inc.*, 2011 U.S. Dist. LEXIS 124082, *21 (N.D. Cal. Oct. 26, 2011)

---

[4] Plaintiff's allegation that Indybay "sponsors" third-party content is not only refuted by the disclaimer on the website – which, contrary to Plaintiff's objection, the Court may judicially notice on a motion to dismiss because, *inter alia*, the website is "referenced in the [First Amended] Complaint," *Kane v. Chobani, Inc.*, 2013 U.S. Dist. LEXIS 134385, *11 n.3 (N.D. Cal. Sept. 19, 2013) (citing *Lee v. City of L.A.,* 250 F.3d 668, 688–89 (9th Cir. 2001)) – it is also irrelevant.  *See, e.g., Global Royalties v. Xcentric Ventures*, 544 F. Supp. 2d 929, 933 (D. Ariz. 2008) ("It is obvious that a website entitled Ripoff Report encourages the publication of defamatory content.  However, there is no authority for the proposition that this makes the website operator responsible, in whole or in part, for the 'creation or development' of every post on the site.").

[5] "[E]ven assuming [defendant] could be considered an information content provider, [Section 230] precludes treatment as a publisher or speaker for 'any information provided by another information content provider'" and "would still bar [plaintiff's] claims unless [defendant] created or developed the particular information at issue."  *Carafano*, 339 F.3d at 1125 ("'The critical issue is whether eBay acted as an information content provider with respect to the information that appellants claim is false or misleading.'") (quoting *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 833 n.11 (2002)).

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

("'[l]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content – are barred") (quoting *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).

All that remains is Plaintiff's speculative suggestion that the Does who posted the content about him may have included "one or more" Indybay "collective members." Opp. 6. This sort of conclusory allegation could be made in virtually any Section 230 case. Allowing it to proceed, if not predicated on well-pled facts, would not only violate *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), it would also "cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged – or [conspired to support] – the illegality of third parties." *Fair Housing Council*, 521 F.3d at 1174.

The response to Plaintiff's suggestion is thus dictated by *Twombly*, *Iqbal* and Section 230. Since "[a] website is liable for the unlawful content of online material only if the website contributes 'materially . . . to its alleged unlawfulness,'" *Gavra v. Google Inc.*, 2013 U.S. Dist. LEXIS 100127, *5 (N.D. Cal. July 17, 2013) (quoting *Fair Housing Council*, 521 F.3d at 1168), Plaintiff must plead facts showing "the website directly participate[d] in developing the alleged illegality." *Fair Housing Council*, 521 F.3d at 1174. "'[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "'that the pleader is entitled to relief.'"" *Levitt*, 2011 U.S. Dist. LEXIS 124082 at *18 (quoting *Iqbal*, 556 U.S. at 679) (quoting FRCP 8(a)(2)). In such a case, "section 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Fair Housing Council*, 521 F.3d at 1174-75; *Goddard v. Google Inc.*, 640 F. Supp. 2d 1193, 1196 (N.D. Cal. 2009) (dismissing amended complaint that did "not come close to substantiating" plaintiff's conclusory allegations that Google "controlled much of the underlying … activity," and "collaborates in the development of the illegal content").[6]

---

[6] Plaintiff's misleading contention that he pursued his FAC against Indybay because it would not identify the third parties who posted the content, Opp. 7, misstates the record while confusing and conflating distinct issues. Plaintiff did not need to identify anyone in December to have the content removed because it was removed by Indybay in September. Dkt. 9 at 4; Dkt 9-1, Exhs. B-C. Instead, Plaintiff was trying to use Indybay's request for an extension of time to respond to his complaint to circumvent the rules on obtaining discovery. *See* Patten Decl., Exh. B (Dkt. 40-1).

## II.

## THE OPPOSITION, WHICH OFFERS NO EVIDENCE AND OVERLOOKS CASES SHOWING THE ANTI-SLAPP STATUTE APPLIES AND INDYBAY'S EVIDENCE MUST BE CONSIDERED, CONFIRMS THE MOTION TO STRIKE SHOULD BE GRANTED

Even if Plaintiff could plausibly state a viable claim for defamation that is not barred by Section 230 – and, as shown, he cannot – his Opposition utterly failed to carry his "burden" under the anti-SLAPP statute to "'substantiate'" such a claim. *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598-99 (9th Cir. 2010) (citation omitted). Although "'[a] plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited,'" *Doe v. Gangland Prods.*, 730 F.3d 946, 957 (9th Cir. 2013) (citations and quotations omitted), Plaintiff made no showing of facts. Nor did he seriously dispute that – if Indybay's evidence is considered – the Court "should strike [his] claim [because] 'defendant's evidence supporting the motion establishes as a matter of law that plaintiff cannot show a probability of prevailing.'" *Id.* (same).

Instead, Plaintiff implores the Court to overlook Indybay's evidence that the content came from third parties, and Plaintiff's lack of contrary evidence, for two reasons. *First*, he contends the anti-SLAPP statute does not apply to the May 24 post. Opp. 9-10. *Second*, he contends Indybay's evidence is inadmissible and cannot be considered. Opp. 1-2 n.1, 11. Neither argument has merit.

### A.     Plaintiff Cannot Evade The Anti-SLAPP Statute By Splitting His Claim In Two

Confronted with clear Ninth Circuit law that the May 24 post is protected as long as the "'broad'" or "'general topic'" of the post concerned a matter of public interest, *Doe*, 730 F.3d at 956, Plaintiff tries to Photoshop his pleadings to remove what he had alleged was the gravamen of the post – "that Plaintiff CHOYCE was dishonest and unethical because he had been evicted," FAC, ¶ 30 – so he can contend the "gravamen" of his "cause of action" is only the eviction, Opp. 9, while asserting his claim based on the rest of the May post against the Doe Defendants.

But "plaintiff cannot avoid operation of the anti-SLAPP statute … through artifices of pleading." *Martinez v. Metabolife Int'l*, 113 Cal. App. 4th 181, 187 (2003). By its express terms, the anti-SLAPP statute applies to a cause of action arising out of "any … conduct" of Indybay "*in furtherance of* the exercise of … constitutional right of free speech *in connection with* a public

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

issue or an issue of public interest." Cal Code Civ. Proc. § 425.16(b)(1), (e)(4) (emphasis added). Consequently, "a court must focus on the 'defendant's activity that gives rise to [its] asserted liability,'" *Doe*, 730 F.3d at 953 (citation omitted), and the particular activity at issue need not itself qualify if it "'furthers'" activity that does. *Id.* (same). As the Ninth Circuit recognized, this means a cause of action – like Plaintiff's amended defamation claim against Indybay – can arise out of conduct furthering speech "in connection with … an issue of public interest" even if it sues over a statement in that speech which may not by itself implicate the public interest. *Id.* at 953-56.

Examples illustrating the point abound. In one case cited in *Doe*, where plaintiff sued over several statements in published reports and "other contexts," California's Supreme Court did not ask whether each statement involved a matter of public interest, but found the statute applied because "defendants' general course of conduct from which plaintiff's cause of action arose was clearly activity 'in furtherance of [defendants'] exercise of … free speech … in connection with a public issue' within the meaning of section 425.16." *Taus v. Loftus*, 40 Cal. 4th 683, 712 (2007).[7]

Conversely, in cases where the statute did not apply, courts found the speech activity mentioned in the complaint was "largely unrelated to and entirely distinct from the injury-causing conduct," such as "the manufacture of a defective product." *Dible v. Haight Ashbury Free Clinics*, 170 Cal. App. 4th 843, 851-52 (2009) (describing *Martinez*, 113 Cal. App. 4th at 191).

In this case, the communication is not "unrelated to and entirely distinct from the injury-causing conduct," but instead *is* the injury-causing conduct. It followed the April article about Plaintiff's alleged misconduct, and says the misconduct alleged in that article motivated the eviction. FAC, ¶ 21. It was "made in the context of an ongoing … discussion" about Plaintiff's conduct as an attorney (also the subject of much of the May post), and, even if the eviction itself

---

[7] In another, the Court of Appeal – recognizing that "[i]n determining whether a cause of action falls within the scope of subdivision (e), courts must broadly construe the anti-SLAPP statute" – found a letter accusing plaintiff of "domestic violence" and "false accusations of child abuse" was "written 'in connection' with an issue of public interest [second-parent adoptions] that potentially affected a large number of [people] beyond the direct participants." *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1160-61 (2004). In a third, a surgeon's cross-claims over statements alleging malpractice were covered by the anti-SLAPP statute because they appeared on a website about plastic surgery, "a subject of widespread public interest," which "contributed to the general debate" about that topic. *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 23-24 (2007).

"concerned issues of only limited interest," it "nevertheless ought to be protected … [to] serve 'the anti-SLAPP statute's purpose of encouraging participation in an ongoing controversy, debate or discussion.'" *Cross v. Cooper*, 197 Cal. App. 4th 357, 380 (2011) (citation omitted). .

The letter and intent of the anti-SLAPP statute thus prohibit Plaintiff from doing what he is attempting – *i.e.*, divide a claim based on a single communication (or course of conduct) into two claims, assert the one based on statements the Court held to involve the public interest only against defendants not present to bring an anti-SLAPP motion, and the other against defendants currently before the Court in a transparent ploy "to avoid application of the anti-SLAPP statute." *Trapp v. Naiman*, 218 Cal. App. 4th 113, 120 (2013).  Rather, the statute applies because "a fair reading of Plaintiffs' claims … generic to include all defendants being sued" shows "they are centered on" protected activity, *id.* – a post on a general topic of public interest.[8]  "Where causes of action allege both protected and unprotected activity, all the causes of action must be stricken." *Id.* at 121.[9]

---

[8] As the Court of Appeal recently held, "[m]aintaining a forum for discussion [by users] of issues of public interest is a quintessential way to facilitate rights, and the [website host] has no liability for doing so." *Hupp v. Freedom Comm's, Inc.*, 221 Cal. App. 4th 398, 405 (2013) (following *Barrett*, 40 Cal. 4th at 40-41 & n.4).  The court thus found the anti-SLAPP statute applied and affirmed an order striking an action for failing to remove another's content under Section 230. *Id.*

[9] In holding that every "UD action [is] a 'written or oral statement or writing made before a … judicial proceeding'" under § 425.16(e)(1), *id.* at 120, *Trapp* also illustrates the error in Plaintiff's theory that a report about an unlawful detainer action would not be a writing in connection with a judicial proceeding under (e)(2). *See also Clark v. Mazgani*, 170 Cal. App. 4th 1281, 1286 (2009) (which Plaintiff misstates by ignoring that it finds "no question that the prosecution of an unlawful detainer action is indisputably protected activity within the meaning of section 425.16"); *Lafayette Morehouse, Inc. v. Chronicle Pub. Co.*, 37 Cal. App. 4th 855, 863 (1995) (which Plaintiff misstates by overlooking that it recognizes writings in connection with other proceedings, not just legislative but also those before a "'judicial body,' … trigger[] the application of the special motion to strike procedure of section 425.16").  While Plaintiff claims self-help evictions occur daily in California, Opp. 10, he cites no authority to support the contention because the law is to the contrary.  Code of Civil Procedure § 1161, mandating unlawful detainer actions, "was enacted to obviate the need for self-help by landlords and thereby to avoid breaches of the peace." *Kassan v. Stout*, 9 Cal. 3d 39, 44 (1973); *People v. Little*, 143 Cal. App. 3d Supp. 14, 18 (1983) ("The field of [local] law relating to unlawful detainer and eviction had been preempted, the Supreme Court ruled, by the state in Code of Civil Procedure sections 1161 and 1161a.").  It is not surprising, then, that California courts have held ***statements about a threatened*** "***eviction[]***" were in connection with a judicial proceeding under § 425.16(e)(2) because "***[c]learly these statements were*** communications in connection with an ongoing dispute and ***in anticipation of litigation***." *Feldman v. 1100 Park Lane Associates*, 160 Cal. App. 4th 1467, 1474, 1481 (2008) (emphasis added).  The same result must follow here, even if only the statement about the eviction is considered.

### B. Plaintiff's Objections Cannot Prevent Consideration Of Indybay's Evidence

Plaintiff errs in contending David Morse failed to establish the foundation and personal knowledge necessary to testify for Indybay. Opp. 1-2 n.1. Just as an officer of a church "could be expected to know" details relating to the operation of that organization, Morse – as one of a small group overseeing operation of Indybay – set forth "personal knowledge of facts demonstrating" he is competent to testify on behalf of Indybay. *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000); *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000) ("Personal knowledge may be inferred from a declarant's position"); *see also* Supp. Morse Decl., ¶¶ 1-6. And his confirmation of Indybay's protection under Section 230 – by attesting that the May 24 post was "not authored or posted … by any member of the Indybay collective," Morse Decl., ¶ 9 – is neither vague nor ambiguous, and the best evidence rule does not apply. *Ogden v. Bumble Bee Foods*, 2014 U.S. Dist. LEXIS 565, *4 n.3 (N.D. Cal. Jan. 2, 2014). Accordingly, the Court "should strike [Plaintiff's] claim [because] 'defendant's evidence supporting the motion' establishes 'as a matter of law' that plaintiff cannot show a probability of prevailing." *Doe*, 730 F.3d at 957 (citation omitted); *accord, e.g., Makaeff v. Trump Univ.*, 736 F.3d 1180, 1183 (9th Cir. 2013) (Wardlaw, J., concurring in denial of rehearing en banc).[10]

### CONCLUSION

To prevent Indybay from suffering the "special form of 'prejudice' [unique] to defendants who improperly are denied early dismissal of claims falling within the zone of CDA immunity," *Goddard*, 640 F. Supp. 2d at 1202, Indybay respectfully requests that the Court grant its motions to dismiss Plaintiff's claims, and to strike his defamation claim against it, without leave to amend.

Dated: January 30, 2014              Respectfully submitted,

**BRYAN CAVE LLP**

By: /s/
    Leila Knox
    Attorneys for Defendant Indybay

---

[10] As *Doe* and *Makaeff* show, the district court cases Plaintiff cites, Opp. 11, do not and could not warrant denial of Indybay's motion to allow discovery. Moreover, Plaintiff made no showing that discovery – such as deposing Morse under FRCP 30(b)(6) – will yield evidence that could defeat Indybay's motion. *See New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1102 (C.D. Cal. 2004).