1                  UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3 Before The Honorable Jon S. Tigar, Judge

4 DIONNE CHOYCE,             )
                        )
5        Plaintiff,    )
                        )
6    vs.            )   No. C 13-1842 (JST)
                        )
7 SF BAY AREA INDEPENDENT MEDIA  )
 CENTER, et al.,        )
8                        )
         Defendants.   )
9 _____)

10                      San Francisco, California
                      Thursday, November 14, 2013
11

12   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                    RECORDING

13

14 APPEARANCES:

15 For the Plaintiff:

16                      Smith Patten
                      353 Sacramento Street
                      Suite 1120
17                    San Francisco, California
                       94111
                      (415) 402-0084
18               BY:  DOW W. PATTEN, Esq.
                      SPENCER F. SMITH, Esq.
19

20 For the Defendant:
                      Casas, Riley & Simonian, LLP
                      One First Street, Suite 2
21                    Los Altos, California 94022
                      (650) 948-7200
22              BY:  DANIEL L. CASAS, Esq.

23 Transcribed by:        Echo Reporting, Inc.
                      Contracted Court Reporter/
24                     Transcriber
                      echoreporting@yahoo.com
25

2

1  <u>Thursday - November 14, 2013</u>                    2:18 p.m.

2                    P R O C E E D I N G S

3                         ---oOo---

4          THE CLERK:  Calling civil case 13-1842, Dionne

5  Choyce versus SF Bay Area Independent Media Center, et al.

6          Counsel, will you please step forward and make

7  your appearance for the record.

8          MR. SMITH:  Good afternoon, your Honor.  Spencer

9  Smith for Plaintiff.

10          MR. PATTEN:  Good afternoon, your Honor.  Dow

11  Patten for the Plaintiff.

12          MR. CASAS:  Good afternoon, your Honor.  Dan Casas

13  for Layer42.

14          THE COURT:  Gentlemen, welcome.

15          The matter is on calendar this afternoon for

16  motion to dismiss under Federal Rule 12(b)(6) and also a

17  motion to strike, and that's the word that the California

18  legislature used, but it's not a motion to strike as that

19  term is ordinarily used in the Federal Court.  It's a motion

20  to strike under the California anti-SLAPP Statute.

21          I think that it might be useful for me to just

22  make a few observations and ask a few questions before we

23  get going.  Let me talk first about the copyright claim.

24          It isn't disputed here that both at the time that

25  the allegedly defamatory -- excuse me.  That's the other

*Echo Reporting, Inc.*

3

1  claim.

2          It's not disputed either -- it's not disputed that

3  both at the time that the allegedly infringing image was

4  posted or the image was posted in violation of Plaintiff's

5  copyright and at the time the complaint was filed, there was

6  no copyright.  Plaintiff had not applied for a copyright.

7  Plaintiff didn't have a copyright.  Under Ninth Circuit law,

8  once you apply, it's like being registered, but there hadn't

9  been any application.  Now, there was an application

10 recently just a few days ago, but that's not what the

11 complaint says.  I know that because a supplemental

12 declaration was filed.

13         So, unless I'm missing something, that claim has

14 to be dismissed with leave to amend.  But that causes me to

15 have some questions for the Plaintiff.  As I read the law,

16 you cannot get backward looking statutory damages or

17 attorneys' fees.  I don't know what -- and this is just

18 pragmatically.  This isn't a matter of pleading.  I don't

19 know what injunctive relief you could get because there's no

20 threat of future harm.  As you said in your papers, the

21 image was taken down, and maybe you have some actual damages

22 from copyright infringement, not apparent.  Maybe you have

23 some.

24         Why am I asking you this?  Because normally I

25 don't put people to their proof at this point.  I don't like

4

1   -- I don't think it's appropriate for judges, most of the
2   time, to push people on the merits at the pleading stage.
3   But here a leave to amend needs to have a point, and so I'm
4   inviting you to tell me whether you think that you can
5   candidly prove -- excuse me -- you can candidly plead actual
6   damages or whether I'm missing something about injunctive
7   relief, because if I don't hear from you that you can, the
8   tentative ruling is going to be that we're going to dismiss
9   that and we're going to dismiss it without leave to amend
10  because we don't think that you can cure the allegation in a
11  way that gives you a claim that has any legs going forward.
12  That's where we are on the copyright.
13            On anti-SLAPP, I won't go through all the
14  elements.  I like anti-SLAPP.  I actually have a lot of
15  experience with that law because of my service as a
16  California State Court judge.
17            Based on Hung Up -- and Hung Up I could go either
18  way on this.  So I'd be very curious to hear from both of
19  you.  Is this a matter of public concern?  Is this a matter
20  of public concern?  There's an unpublished -- well, I don't
21  have it.  I want to say it's the Third District.  There's an
22  unpublished California State Court case that says it's not a
23  matter of public concern.  I just found it over the lunch
24  break.  It's called Harbison, H-A-R-B-I-S-O-N, v. NorCal
25  Mutual Insurance Company.  I'd give you a cite, but there

5

1  isn't one.  You have to pull it off the computer.  It was

2  never published.  The irony, of course, is that in the State

3  Court, you're not allowed to cite unpublished authority.

4  Now here I am on the federal bench, that's about 90-percent

5  of what people cite to me.

6          What this Court concludes is that it is not a

7  matter of public interest.  I don't have the exact page in

8  front of me, but -- because there's just a cover page, but

9  it is essentially that the only place that you are

10  privileged to make a statement about attorney misconduct is

11  in an attorney disciplinary process and that allegedly

12  defamatory statements outside of that process are not -- are

13  not protected activity.

14          I'm citing this to you so you know I read it.  If

15  I agreed with it -- if I knew I agreed with it, I would tell

16  you that's my tentative, but I'm not sure I do agree with

17  it.  I really could go either way.

18          With regard to the other elements of the SLAPP,

19  I'll leave you to your arguments.

20          This is the Defendant's motion.  So, Mr. Casas,

21  let me hear from you first.

22          MR. CASAS:  I'm curious about the case that your

23  Honor has provided to us.  So, without seeing it, our -- the

24  argument in our papers -- and I don't want to simply repeat

25  -- that is the position we've stated, that the State Bar has

6

1  an interest, the general public has an interest in lawyers'

2  conduct, whether it's within the practice or outside the

3  practice, that is some violation, whether it's a criminal

4  act that is consistent with the State Bar Disciplinary Rules

5  that focus on acts of moral turpitude, and the posting --

6  the specific postings in this case I think meet that general

7  principle.

8          THE COURT:  Let me ask you a question, and I'll

9  tell you, by the way, if you go onto Westlaw and you search

10  "attorney misconduct" in quotes, that phrase -- I think I

11  used the sentence connector -- and "public interest," you

12  can't find anybody to say that.  You find about -- and I'm

13  -- this is all feds and all states, every jurisdiction in

14  the country.  I got about 40 cases, 40 to 47, somewhere in

15  there.  I found one case.  That's the one I told you about.

16          So -- but let me give you a hypothetical, and tell

17  me why this is different.  And, first of all, before I give

18  you the hypothetical, let me say that, to make a

19  distinction, if there were a series of crimes that were

20  already in the newspaper, let's say you had a serial rapist

21  and people are very concerned and scared and this is a

22  matter of community concern, people are locking their doors

23  more, spending less time outdoors, that kind of thing, and

24  the newspaper prints something that a particular individual

25  whom they name is suspected of having committed the crimes

7

1  in question, I've not read in the cases, but I would not be

2  surprised if courts have held in like circumstances that

3  that statement affects a matter of public concern because it

4  already is a matter of public concern.  But in my

5  hypothetical, let's say there have not been any such crimes

6  reported.  There's no public discussion whatsoever and the

7  newspaper simply prints about a private individual, that

8  this individual has committed numerous rapes -- now, that's

9  a horrible word, but I choose it advisedly because I like

10  good hypotheticals, and that's a terrible thing to accuse

11  somebody of, but it's also something that people in the

12  community would want to know about.  And where I'm going

13  with this is in my hypothetical, don't the -- don't that

14  person's neighbors, don't the persons in geographic

15  proximity to that person have at least the interest in,

16  whether or not that's true, that other persons have in Mr.

17  Choyce's alleged conduct here, but isn't it also the case

18  probably there the Court would say, "No, that's defamatory.

19  That's not a matter of public interest."  And, moreover, if

20  we were to hold this a matter of public interest, that's

21  sort of -- that's, you know, chicken before the egg.

22          Now, I'm thinking out loud here.  I don't want the

23  Plaintiffs to say, "Hey, wait a second.  You said it's

24  chicken before the egg."  It's a hypothetical.  Okay.  But

25  because if -- if you say, "Well, that's public interest,"

1   that's just -- no, they -- just because they said it.  It's

2   not a matter of public interest.  No one in the public knew

3   anything about it until they said it.

4          Why is this not like that?  As I hear myself say

5   it, I'm not sure how clear a hypothetical that is or good.

6          MR. CASAS:  Well, in either -- I think it's

7   reasonable because in both cases they are -- let's assume

8   they're defamatory statements, they're untrue.  Does that

9   then make it not a matter of public interest?  I think we've

10  cited some authority that suggests that even defamatory

11  statements can be subject to the protections of --

12         THE COURT:  Well, they don't have to be true to be

13  subject to the public interest.  I agree with that.

14         MR. CASAS:  Okay.  So I'm not -- I think --

15         THE COURT:  You think in the hypothetical --

16         MR. CASAS:  -- a really --

17         THE COURT:  -- it is in the public interest?  The

18  statement is in the public interest?

19         MR. CASAS:  Absolutely.  Absolutely.  And, you

20  know, we're dealing with lawyers.  We're dealing with our

21  justice system.  Lawyers serve in a, you know, very special

22  capacity and profession in our country, and if it's not a

23  matter of public interest what happens to be posted in a --

24  in the media, then I'm not sure what is.  Of course, you've

25  extended that in your hypothetical to I think a reasonable

9

1 but an extreme case, and I would agree that that is also in

2 the public interest.

3          THE COURT:  Well, the reason I think that is

4 because you don't want somebody to back off the rule because

5 it's -- the sting is particularly harsh, right?

6          MR. CASAS:  Right.

7          THE COURT:  The rule has to be the same

8 everywhere.

9          Anything further now that you've dealt with my

10 weird hypothetical?

11          MR. CASAS:  I think we've said it all in the

12 papers, your Honor.

13          MR. SMITH:  Your Honor --

14          THE COURT:  Would you say your name first because

15 -- for the tape recorder to pick up.

16          MR. SMITH:  Your Honor, Spencer Smith on behalf of

17 the Plaintiff.

18          In response to your hypothetical, I want to take

19 -- take a step back a bit.  Defendant is arguing that by

20 virtue of being a member of the California State Bar, anyone

21 can make any statements about you and it's a matter of

22 public concern, and when we look at this, defense counsel

23 made reference to the statements about conduct outside the

24 conduct of representing clients and inside the conduct of

25 representing clients.

10

1       Now, representing someone, and there's allegations

2  that are made about an attorney misappropriating funds from

3  their clients, we can see how that can be a matter of public

4  concern.

5       THE COURT:  Why?

6       MR. SMITH:  Well, your Honor, if the statements

7  are true -- and that's why I want to get to -- that's the

8  second point of this analysis.

9       Now, if we look at the two steps of the anti-SLAPP

10 statute, number one, we don't know from the Defendant's

11 moving papers if they made these statements, if they

12 participated in these statements, if they did nothing and

13 they were passive.  We don't -- we don't know from their

14 papers.  We don't know who made these statements because --

15      THE COURT:  Well, that's -- that's not at issue

16 now.

17      MR. SMITH:  Well, the other Defendants aren't

18 here, and I want to make -- I want to -- your Honor, if I

19 can --

20      THE COURT:  I have an interest in that topic, as I

21 previously expressed.

22      MR. SMITH:  Now, so, when we look at, number one,

23 who makes the statement, who made these statements about Mr.

24 Choyce, that he was evicted from his office, which he was

25 not?  How is that a matter of public concern?  All

11

1   statements about lawyers hurts their business.

2           THE COURT:  Well, let me ask you something because

3   there's a distinction I think perhaps even within these two

4   statements that are at issue here.  Obviously if you commit

5   misconduct with regard to a client if you're a lawyer and

6   the misconduct rises to a certain level, you can be subject

7   to discipline, right?

8           MR. SMITH:  Correct, your Honor.

9           THE COURT:  But you can also engage in conduct

10  that is not related to your representation of a client

11  which, if it involves moral turpitude, also can relate in

12  discipline, correct?

13          MR. SMITH:  Correct, your Honor.

14          THE COURT:  And if it were shown to the

15  satisfaction of the State Bar that you had embezzled, you're

16  an embezzler, would you agree with me that at least in some

17  circumstances the State Bar would conclude that discipline

18  were appropriate?

19          MR. SMITH:  Yes.

20          THE COURT:  Now, being evicted, as far as I know,

21  is not a basis for State Bar discipline, right?

22          MR. SMITH:  Correct, your Honor.

23          THE COURT:  So do you think there's a meaningful

24  distinction in this case between those two statements?

25          MR. SMITH:  Your Honor, the distinction that you

12

1   just made was if it was shown you, in fact, embezzled, would

2   that be a matter of public concern.  The second step in this

3   analysis, which the Defendants have to prove is if they have

4   a likelihood of success on the merits in these claims, that

5   is, they are true, these statements are, in fact, true.

6          THE COURT:  Well, that's what you have to show if

7   we get to that point in the analysis, and I -- I don't --

8   the way this works is if the Defendants convince the Court

9   that they're entitled to the protection of the anti-SLAPP,

10  in a sense that they show that this statement is -- falls

11  within the protected activity category, that doesn't mean

12  that you're out of court.  It means that you have to show

13  that there's a likelihood of prevailing, and you have to do

14  it by submitting some evidence that the persons who made the

15  statement knew that it was false or that they -- I don't

16  want to recite the First Amendment intent requirements to

17  you, but that you satisfy those.

18          MR. SMITH:  And I don't want to put the chicken

19  before the egg in this analysis, your Honor.  What's

20  happening here is, again, the Defendants would have that a

21  member of the Bar, you can say whatever you want about them,

22  and as long as you're alive or your defamatory statement

23  involves moral turpitude, your allegations involve moral

24  turpitude, it's a matter of public concern.  That slippery

25  slope, your Honor, is something that we should not subject

13

1  the members of the Bar to.  You can imagine if you make a

2  ruling that I don't agree with and I say, "Well, you're a

3  public figure.  I can go out and just accuse you of any

4  moral turpitude and say it's a matter of public concern,

5  whether it's true or not."

6          THE COURT:  If you'll google my name, you'll find

7  out that that has already occurred.  So that is about the

8  least -- that is not a tremendously persuasive hypothetical.

9  It is a fact that if you're a public figure like I am,

10 people can say the most nauseating things about you, and

11 there isn't thing one you can do about it except put on the

12 big boy pants, but I don't think that's the result you're

13 arguing for here.

14          MR. SMITH:  Correct, your Honor.  And so, again,

15 when we have a Defendant coming in saying "As long as I make

16 -- my defamatory statement somehow touches on conduct that

17 involves moral turpitude, I get the protections of the anti-

18 SLAPP statute," I don't think that's the purpose of the

19 statute.  And that's the concern that we have about the

20 statements that are being made by Mr. Choyce by the

21 Defendants who are not before us today.  And, again, I don't

22 believe that every, you know, internet service provider or

23 -- I don't know exactly what Layer42's role was in these

24 statements being published on the internet because we don't

25 have that information, but the way the anti-SLAPP came to

14

1  the Court is premature.  We don't have the -- the Defendants

2  who are running this website before the Court who are going

3  to be the individuals who are going to say "I put these

4  statements up based on X, Y and Z knowledge, that I either

5  believe them to be true or not."

6          So where we are, again, is I -- I don't know of

7  any authority that says all attorneys are public figures and

8  being a member of the Bar, anyone can make an allegation of

9  moral turpitude that's defamatory they're protected by the

10  anti-SLAPP Statute.

11      (Pause.)

12          THE COURT:  What do you think about the question

13  of whether the Defendant is shielded from liability under

14  Section 230?

15          MR. SMITH:  Your Honor, under Section 230, it

16  seems to me that the Defendants are arguing by virtue of

17  being an internet service provider they have immunity.

18  Again, that's a factual analysis that the Court or the trier

19  of fact will have to go through to decide the role of the

20  internet service provider.

21          THE COURT:  Well, we're in an odd situation

22  because there's a matter of 12(b)(6) decision making.

23  You're right.  Their arguments under Section 230 rely on

24  matters that are outside the pleadings, and they're not

25  judicially noticeable, and I can't really get to them.

15

1        If I get there under anti-SLAPP, it probably means

2  that along the way I've made some other decisions that are

3  not good for you.  In other words, the anti-SLAPP probably

4  gets granted without my reaching that issue, although, under

5  an anti-SLAPP, I'm not limited to the pleadings.

6  Interesting law.

7        So you can say, "Your Honor, I'd prefer to wait

8  until later in the case because the issue is not ripe yet."

9  I'm just telling you, as I sit here, that whether or not I

10  reach it this time, I haven't seen a glimmer of anything

11  from your side that would tell me how they stay in the case,

12  and that's just a curiosity to me.

13        MR. SMITH:  In terms of 230?

14        THE COURT:  Yes.

15        MR. SMITH:  Your Honor, there's several cases

16  involving 230 in the anti-SLAPP Statute and the interplay

17  between both in that 230 immunity has been cited as a reason

18  for likelihood of success on the merits.  And, again, in

19  order to make that determination on the immunity, we have to

20  know Layer42's role in the publishing of the statements and

21  their authority to amend or change these statements.  That's

22  not before the Court on the papers that have been provided

23  to the Court.

24        THE COURT:  All right.  Anything further?

25        MR. SMITH:  No, your Honor.

1    THE COURT:  This is a good time for me to ask you

2  when the other Defendants in the case will be served?

3    MR. PATTEN:  Your Honor, today we filed proof of

4  service on one of the other remaining Defendants, Indy

5  Media, and we're -- have named a Defendant that apparently

6  is no longer the contractual party based upon the papers

7  that were submitted by -- and this is Mr. Patten.  I'm sorry

8  -- that were submitted by Defendant Layer42.  So we're

9  trying to identify those individuals or that entity, and we

10  will need to -- leave to amend to name that intermediary

11  party because I'm not certain that Cernio is the proper

12  party at this juncture.

13    THE COURT:  All right.

14    MR. PATTEN:  But we have filed proof of service on

15  SF Bay Area Independent Media Center, aka, et cetera.

16    THE COURT:  All right.  Thank you.  That's

17  helpful.

18    Mr. Casas, last words?

19    MR. CASAS:  As to the last point, your Honor, I

20  would just say that I think, as counsel would have it, as to

21  the burden that is set out under the anti-SLAPP rules in

22  terms of the two steps, they've got the burden.  It's not

23  our duty to prove that the CDA immunity applies to somehow

24  get over that second hurdle.

25    THE COURT:  All right.  What I meant -- and I

1 don't know how clearly I said it. What I meant about the

2 question of whether or not I get to it is if the statement

3 -- if I find that the statement was protected activity, then

4 you're right. Then the burden does shift to them, and then

5 -- and I can consider that the -- and I can consider

6 everything that the Defendant put in on this motion and

7 there really isn't anything coming back the other way.

8          MR. CASAS: Right.

9          THE COURT: But if I decide that -- that the

10 speech wasn't protected activity, then I just have to look

11 at the four corners of the -- then the anti-SLAPP motion

12 sort of goes away, and then on a motion to dismiss, I really

13 just have to look at the four corners of the complaint

14 unless judicially noticeable, and I think we're going to

15 have to have the fight about Section 230 on a different day.

16          MR. CASAS: Understand.

17          THE COURT: Because they will be entitled to some

18 discovery, and they'll take that and --

19          MR. CASAS: Uh-huh.

20          THE COURT: Anyway, I'm just philosophizing up

21 here on the bench. I'm not really helping you.

22          Let me let you finish your argument.

23          MR. CASAS: I'm done. Thank you.

24          THE COURT: All right. Gentlemen, thank you. I'm

25 going to take these motions under submission, and we expect

18

1    to get an order out shortly.

2            MR. SMITH:  Your Honor?

3            THE COURT:  Yes.

4            MR. SMITH:  This is Spencer Smith.  We had the

5    copyright issue.

6            THE COURT:  Oh, yes.

7            MR. SMITH:  You touched on that.

8            THE COURT:  Oh, yes, I had asked you some

9    questions.  You have the floor.  I'm curious to know the

10   answers.

11           MR. SMITH:  Your Honor, one of the things you

12   touched on when you were prefacing the copyright claim was

13   whether or not leave to amend would be an exercise of

14   futility in light of the fact there would be no threat of

15   future harm.  There is a concern for future harm in that,

16   unconventionally, the Defendants put forward before the

17   Court our settlement negotiations, trying to get this

18   resolved, and one of the issues that came up was the picture

19   being taken down and then resurfacing later on on Layer42's

20   -- on their servers, and it was the picture.  Then it was

21   just a reference to the Choyce JPEG.  So there is a concern

22   for future harm because we don't have --

23           THE COURT:  It's far for me to imagine ever taking

24   someone's settlement negotiations into account.

25           MR. SMITH:  I'm sorry, your Honor?

19

1        THE COURT:  I'll give you leave if you want it.

2        MR. SMITH:  Oh.

3        THE COURT:  But I'm just saying it's hard for me

4   to imagine ever taking anybody's settlement negotiations

5   into account, and the fact that somebody -- I don't recall

6   the details of your settlement negotiations, but let me just

7   say this.  If I knew -- let's say in a hypothetical

8   situation that I was on the other side of you in a lawsuit

9   and my clients had done something that your client didn't

10  like and my client had already stopped doing it and had no

11  interest in ever doing it again, there would be nothing

12  cheaper or easier for me to offer you in a settlement

13  negotiation than to promise you that they would never do it

14  again because they have no interest in never doing it again.

15        The fact that the subject came up in a settlement

16  negotiation wouldn't tell someone else as a judge that there

17  were a likelihood of future harm I don't think.  Maybe I'm

18  missing the issue.

19        MR. SMITH:  My point is, your Honor, when our

20  settlement negotiations broke off, we were trying just to

21  get all of the Defendants to be parties to it.  And then we

22  turned around and this motion was filed.

23        THE COURT:  Yes.

24        MR. SMITH:  Our hope -- our hope was -- you're

25  exactly right.  I would agree with you 100-percent that the

*Echo Reporting, Inc.*

20

1   easiest thing to do is to resolve it, but we need all of the

2   Defendants here to do so.

3           THE COURT:  I see.

4           MR. SMITH:  And that's -- that's why --

5           THE COURT:  It's their failure to refuse.  It's

6   like a declaratory judgment case.

7           MR. SMITH:  Well --

8           THE COURT:  We will -- we will let that play

9   itself out.

10          MR. SMITH:  Yeah.  I just think once we have all

11  the Defendants here, it probably will resolve itself, your

12  Honor.

13          THE COURT:  Very good.  Mr. Casas, anything on the

14  copyright question?

15          MR. CASAS:  I agree, your Honor, there's no future

16  harm, no future damage.  They may be concerned, but that's

17  not enough to establish a copyright claim.

18          THE COURT:  Yeah.  I think that a better practice,

19  though, for me as a judge is not to essentially render an

20  advisory opinion as to a complaint that hasn't yet been

21  filed.  You all can take my comments under advisement, and

22  we'll probably give the Plaintiff leave to amend, and they

23  can -- we'll leave them to the remedies.

24          Thank you.

25          ALL:  Thank you, your Honor.

21

1       (Proceedings adjourned at 2:45 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

22

CERTIFICATE OF TRANSCRIBER

1

2

3      I certify that the foregoing is a true and correct

4 transcript, to the best of my ability, of the above pages of

5 the official electronic sound recording provided to me by

6 the U.S. District Court, Northern District of California, of

7 the proceedings taken on the date and time previously stated

8 in the above matter.

9      I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14

15

16          Echo Reporting, Inc., Transcriber

17          Saturday, January 18, 2014

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*